**CONTINUATION IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Dustin Hurt, being duly sworn, depose and state as follows:

***Introduction and Agent Background***

1. I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice, since October of 2018. I am currently assigned to the Detroit Field Division, Lansing Satellite Office. Prior to being assigned to the Lansing Office, I was assigned to the ATF Flint Field Office. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. Before working for the ATF, I was employed by the Michigan Department of State Police (MSP) for approximately seven years. Before working for the Michigan State Police, I was a local police officer for the Grand Ledge (MI) Police Department for approximately three years. I held numerous positions with the MSP, including Detective Sergeant in the Polygraph Unit and Task Force Officer with the FBI's Safe Streets Task Force (Flint, MI). During my employment with ATF and MSP, I have conducted or participated in numerous criminal investigations focused on firearms, armed drug trafficking, violent crime, criminal street gangs, and other violations of federal law. The facts in this Continuation come from my personal observations, training, experience, and information obtained from other witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

2. I submit this continuation in support of an application for a warrant for ALFRED THOMAS for possession of machineguns in violation of 18 U.S.C. § 922(o).

***Facts in Support of Complaint and Arrest Warrant***

3. Over several months, an ATF agent developed a buyer-seller relationship with THOMAS, who agreed to sell machine gun conversion devices (MCDs) on several occasions.

4. On August 10, 2026, the ATF undercover agent (UCA) was contacted via text message from cellphone number 517-271-3985, previously identified as being THOMAS. THOMAS texted UCA asking when UCA could come meet with him to pick up MCDs. At a prior purchase of MCDs, THOMAS and UCA had discussed purchasing ten MCDs at a time. THOMAS contacted UCA to alert him that more MCDs would be delivered soon.

5. After the MCDs were delivered, UCA asked how many MCDs THOMAS received. THOMAS advised he had nine of them. THOMAS agreed to sell nine MCD's to UCA for a total price of $1,800. Both parties agreed that the transfer would occur on August 13, 2026.

6. On August 13, 2026, prior to the deal, UCA texted THOMAS's cellphone, telling THOMAS that UCA was on his way. UCA asked if they were using the same location as previous encounters (5500 Kaynorth Road, Lansing MI 48911). Thomas replied, "yea."

7. At approximately 11:32 a.m., UCA and a second ATF Agent acting in an undercover capacity (UC2) arrived at 5500 Kaynorth Road and called THOMAS.

Shortly thereafter, UCA and UC2 observed THOMAS exit his apartment building. THOMAS entered the front passenger seat of the undercover vehicle (UCV), as shown here.





8. After Thomas entered the UCV, he handed UCA a clear plastic bag containing the nine MCDs. UCA opened the bag, confirmed it contained the MCDs, and then handed the evidence to UC2 to count. UC2 and UCA counted the MCDs and found there to be nine. Also in the packaging were Lego pieces used to hide the MCDs as they traveled through shipping carriers.

9. Once UCA confirmed all nine MCDs were there, UCA handed THOMAS $1,800 in pre-recorded government funds. THOMAS accepted the $1,800, exited the UCV, and returned to his apartment.

10. Below is a photograph of the nine MCDs, along with the packaging material, purchased from THOMAS on that day.



11. An MCD, often referred to as a "Glock switch," "switch," "button," or "auto sear," is a mechanism that can be attached to the backplate of the slide of a Glock pistol. Glock pistols are designed to fire semi-automatically, which is defined as one projectile being fired from a firearm with each single pull of the trigger. Inside a Glock pistol is a mechanical part identified as a sear, which stops the pistol from firing more than one round with each trigger pull. When the MCD is inserted into the backplate of the Glock pistol it allows for the mechanical sear inside the firearm to not engage, thus making the pistol fire fully automatic or as a machine gun as defined by Title 26 U.S.C. § 5845(b). I have spoken with Glock Inc., and have been advised they do not, and have never manufactured, these devices.

12. THOMAS appears in rap videos online in which he and others discuss "switches" and shooting through a "50 round mag," referring to the automatic function of an MCD installed on a firearm with a large-capacity magazine.

13. Based on the secretive transaction, the price of the MCDs, obscuring the MCDs in the packaging, discussions about further supply, and online videos where

THOMAS raps about switches, there is probable cause to believe that THOMAS knew the function of the MCDs that he possessed and transferred.

***Conclusion***

14. I respectfully submit that there is probable cause that, on August 13, 2026, as described above, ALFRED THOMAS knowingly possessed and transferred machineguns in violation of 18 U.S.C. § 922(o).